THE CAMDEN BANK v. EDWARD HALL and WILLIAM HALL.

An alteration in even a material part of a bond, if made by consent of both parties, does not invalidate the instrument.

This was an action of debt brought upon a bond, in the Court of Common Pleas of the county of Salem. The defendants pleaded *non est factum.* On the trial, the bond was overruled as evidence, and a bill of exceptions sealed. The proceedings are removed into this court by a writ of 'error. The question raised on the argument, is fully stated in the opinion delivered by the judges of this court.

*S. L. Southard*, for plaintiffs in error.

*Field*, contra.

FORD, J. This case arises on a plea of *non est factum* to a bond alleged to have been made by Edward Hall and William Hall, to the Camden Bank, the 27th of January, 1827, in the following manner. Edward Hall, had made a promissory note to William Hall, which William had endorsed to the bank, whereby they had both become liable for the money ; Edward, as principal, and William as security. This note had been *delivered up* to them, when they were both together; upon Ed-

ward's giving his several bond and warrant of attorney to confess judgment for the amount of it to the bank; *and* upon this further agreement, that if the money could not be made out of Edward's property by execution, that then William, the security, should sign the bond likewise. After judgment had been entered up, execution sued out, Edward's property all sold, and only a small part of the debt satisfied, William, being called upon, performed the other part of the agreement; and signed, sealed and delivered the bond also; the attorney of the bank having for this purpose, first interlined William's name in the body of the bond, and altered singulars into plurals, as "I am," into "we are;" "my," into "our;" "hand," into "hands," &c.; in order to get it effected according to agreement. Soon afterwards, it was shown to *Edward* with these alterations all in it, who said *it was right;* though he was sorry, for William would have to pay it, as they could not get money from any of the banks. Whether the bond, after being thus altered, continued to be the deed of *Edward* or not, was merely an inference of law to be drawn by the court; who decided that it was *no longer his deed;* and this is the point in the bill of exceptions for our consideration.

The general rule laid down in *Pigot's case,* 11 *Coke* 27, that if the obligee alter any part of the bond, either material or immaterial, it shall be void, has been qualified and restrained in a number of cases, wherein it has been adjudged not to be void, if the obligee made the alterations *by the consent of the parties.* Thus in *Markham* v. *Gomaston, Moore* 547, the bond was drawn to indemnify against a certain person, but his christian name not being recollected, the bond was executed with a blank for this christian name, to be filled in afterwards; the obligee afterwards filled it in himself, and for this alteration, the obligee plead that it was not his deed; but the *court* held the bond to be valid. This case was cited by Sir Matthew Hale, in 2 *Lev.* 35; and the doctrine of it was established by the whole court, that an alteration in even a material part of a bond, *if made by consent of both parties,* does not invalidate the instrument. In 1 *Vent.* 185, the court say, it is the *common practice* for sheriffs to take bail bonds of defendants, with blanks for the names of *securities,* which are afterwards filled

up with the names of those securities when they come to sign the bonds. In the case of *Woolley* v. *Constant*, 4 *Johns*. 54, a bill of sale of a ship, was executed and delivered, containing blanks for the recital of the register; which blanks were afterward filled up by the vendee, *with the consent of the vendor*, and it was *held* by the whole court, that the bill of sale was good : that *after* a deed has been executed, it may be altered in a material part, *with the consent of parties*, without affecting its validity. In discussing this point, the court cited and approved of the foregoing cases, in *Moore*, *Levins & Ventries*, and rested its decision chiefly upon them. So in *Smith* v. *Crooker & Cushing*, 5 *Mass*. 538, Parsons, C. J. delivered the opinion of the whole court, that after a bond has been delivered, an alteration may be made in it, *by the consent of parties*, without impairing its validity ; and he cited and relied on the foregoing cases, as legal authority ; and referred also to the case of *Pagot* v. *Pagot*, 2 *Chan. Rep.* 187, as further authority. That court carried the doctrine to its uttermost limit, by holding, that the *evidence* of consent, may be altogether *presumptive ;* for if a person executes a bond, knowing there are blanks in it, to be filled up by inserting particular names of things, he must be *considered as agreeing* that the blanks may be thus filled, after he has executed the bond. And for this the court referred to the common practice of sheriffs, as mentioned in 1 *Vent.* 185. In *Hunt* v. *Adams*, 6 *Mass.* 621, the court came over this doctrine a second time, and not only confirmed it again, but strengthened it by observing, that it is the practice *in custom house bonds*, to have blanks left for the duties, to be filled up after the bonds have been executed, when the duties shall be ascertained. It is observed in 4 *Johns.* 59, that a deed may be altered in a material part, with the consent of both parties ; and that it is *difficult* to perceive any objection to it, since the temptations to abuse and fraud, which would be felt, if such alterations were allowed by *one party only* do not exist. It is useless to state other cases to prove that a deed may be altered after its execution, *by consent of parties ;* I therefore only note them, as cited at the bar. *Com. Dig. tit. Fait ; Sug. on Pow.* 236 ; 2 *Pick.* 12 ; 1 *Anstr.* 228 ; 5 *Maul. & Selw.* 223 ; 9 *Cranch.* 28 ; 1 *Hen. & Munf.* 391.

The case at bar shows alterations made by the obligees, or

their attorney, in the bond, after it had been executed by Edward Hall; but it shows also, that they were made *by his previous consent*, and received his subsequent *ratification*. Instead of continuing Edward's *sole* bond, it was altered with his consent, into a *joint* one, by the signature of William. The interlineation of William's name, and change of singular into plural words, were incidental to the agreement. Founded, therefore, on consent of parties, those alterations will not invalidate the instrument, according to the current of adjudications before stated. Edward's *sole* bond was relinquished; it had performed the office it was created for, by making his property first liable; and was then converted into a *joint* one, by his consent; a withdrawal of that consent, could it now be permitted, would extinguish the joint bond also. Men are allowed to make any legal agreements they please, but once legally made, they become sacred, so that the party has no power to withdraw them at his pleasure; it is a power that would destroy all contracts, and endanger all confidence in them. It is asked, whether Edward Hall, ever signed or executed a *joint bond;* the answer is, he executed one alone; and *then agreed* it should be altered into a joint one; it was accordingly done, and he ratified it. The agreement was legal, and the alteration in pursuance of it was legal. He complains, that there are two judgments for one debt; whereas two judgments are the common and legal consequence of joint and several obligations; and this was made so, *at his own instance.* The bank asked for, and preferred a joint obligation at first; but the defendants insisted, as Edward was principal, on having him first bound *alone,* and if his property did not pay the debt, then William, who was only the security, should sign it jointly with him; thus *they* made it *impossible* to avoid two judgments; and if there be a hardship in it, they made it themselves; but there is really none in the case, for a payment of *either* judgment, discharges them *both.* The alterations having been made in the bond, *by consent of parties*, did not at all invalidate the instrument: and it was an error to refuse it in evidence, for which, the judgment must be reversed.

RYERSON, J. The action below was debt on a bond; the pleas *non est factum* and payment with notice of special matter subjoined.

Camden Bank *v.* Hall.

By a bill of exception taken on the trial below, and annexed to the record, it appears to have been proved, that the defendants were liable to the plaintiff, Edward, as maker, and William, as indorser of a promissory note, for a large sum of money. It was proposed to them by the attorney of the plaintiff, that they should join in executing a bond and warrant of attorney to confess judgment for the amount. This, William declined. But it was then agreed between Edward, William and the attorney, that a bond and warrant against Edward alone, should be taken, and if the money could not be raised from his property, William also should execute them. Edward executed accordingly, his several bond and warrant, the note was given up, and judgment duly entered pursuant to the warrant. Only a small part of the money was raised on this judgment. The attorney then presented the bond and warrant to William, who executed and delivered them to the attorney, after they had been altered by the insertion of William's name along with Edward's; and changing " I " into " we," and in like manner throughout, so as to make it the joint bond of the two. The instrument being then presented to Edward, and he informed of, and shown the alterations, expressed his assent, by saying " it was all right." After this proof, the bond was offered in evidence, and rejected by the court, which is the error complained of. To arrive at a correct conclusion, it seems necessary to ascertain whether a bond which has been duly executed by one man as his sole deed, can, with his consent, be changed into the joint bond of himself and another, and still remain the deed of the first obligor, without a new execution or sealing and delivery by him also. Or it may, perhaps, be resolved into the more simple and general inquiry, whether a deed can be altered in a material part, by consent of the parties, without avoiding it.

I have not thought it necessary, in presenting the question, to take any notice of the fact of a recovery upon the bond in its first form. That could only affect, (if it have any operation,) the plaintiff's right to a verdict on another point in the cause, and could not prevent its being read in support of the issue of *non est factum*, on his part to be maintained. The debt, at most, might be thereby merged in a debt of a higher nature. But the validity or existence of the bond could not be thereby de-

stroyed. In other words, it was only, (if it were that,) a defence to the action, and did not meet or negative the plaintiff's allegation, that the writing was the deed of the defendants.

Ancient reverence for a seal, was more profound than it now obtains. Its supposed sanctity, has, like most other things, yielded to the influence of time. A man was once estopped by his seal, from alleging the truth. He may now, however, set up both fraud and *illegality* in avoidance of his deed. So anciently the judges, on profert, and by *inspection merely*, condemned the deed for erasures and interlineations, without allowing even the party to prove by witnesses, that they were made before sealing. Time has changed the question to one of fact, to be settled by the jury, whether done before or after sealing, and thus, perhaps, to sustain or overthrow the instrument. And now a jury will be allowed or even *directed*, to presume it done before the execution, until otherwise proved. Again, it has been held that a deed was avoided by *any* alteration in a material part, though made by the consent of parties. But a multitude of modern cases maintain a different doctrine. Thus it has been held by high authority, that a bond executed by one, might be altered by the addition of the name and seal of another. That a policy of insurance, under seal, might be altered in the name of the ship insured. That a bond of indemnity against another bond, executed in blank as to the name of the obligee against whose claim the contract was to indemnify, might have the blank filled up. That bonds in blank as to the name of the obligee, and the sum, or as to the names of some of the obligors, might be perfected without the presence of the party who had sealed it. That a bill of sale of a ship, might omit the recital of the registry, and have it subsequently supplied. And that the name of one obligor might be erased, and another inserted. In all these cases the deeds have been sustained. Without attempting to point to all the books of reports which I have looked into, relative to this question, I content myself with a reference to *Petersd. Ab. vol.* 7, *p.* 725-7, and the books there referred to, and to 4 *John.* 54 and 9 *Cranch,* 28. I would simply remark, that one of the earliest of these cases, as well as that in *Cranch,* were settled in the most solemn manner by plea and demurrer. In the case reported by Cranch,

Camden Bank *v.* Hall.

Justice Livingstone alone dissented on this point; and as I understand him, not so much from the *judgment* of the court on the case before them, as from the comprehensive language in which it was pronounced. And in his reference to the case of the new and additional obligor added to the bond above noticed, he does not attempt to deny its doctrine, but only its application to the case before the court. I am aware that opinions and decisions may be found, against the cases referred to, but I believe they are, at this day, of but comparatively feeble authority. I am therefore constrained to say, that a bond or deed, may, after delivery, be altered in a material part, or perhaps in *any* material part, by consent of the party who made it, and still remain his deed. And in such alteration as that before the court, it may be for the advantage of the first obligor. It is not often that we have cases so nearly the same as is this and those above instanced, of the addition of a new or second obligee; one of which may be found in *Cranch,* and the other in *Levins.* There was therefore, in my opinion, sufficient evidence before the court below, that this writing was the deed of the defendants, to justify its being read to the jury. In refusing to permit it, the court erred, and their judgment should be reversed.

HORNBLOWER, C. J. dissented principally upon the ground that the evidence stated in the bill of exceptions, would not have justified a jury in finding that Edward Hall consented, that the bond which had been executed by him as his individual and separate bond, after judgment had been thereon entered against him, should be so altered, as to be converted into another instrument; and made a *new* and *joint* bond against him, and William Hall; that the evidence only went to show that Edward Hall agreed, that in a certain event, William Hall should execute *the bond,* which he, Edward, had executed, in such way as to make him, William, *individually* liable thereon, and not so as to make it a *new* and *joint* bond against them both.

Judgment reversed.